Submitted on record and briefs November 6, affirmed
December 8, 1975

STATE OF OREGON, *Respondent, v.* ELDEN
CARL VALASCO (No. 74 5972, CA 4291),
*Appellant.*
543 P2d 37

Gary D. Babcock, Public Defender, and John K.
Hoover, Deputy Public Defender, Salem, filed the
brief for appellant.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Thomas H. Denney, Assistant Attorney General, filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

SCHWAB, C. J.

Defendant was charged with, found guilty by a jury and convicted of the crimes of burglary in the first degree and attempted murder. The burglarized premises was a pharmacy. At trial the defense presented was insanity, i.e., that the defendant acted out of a desire of self-destruction resulting from his depressed mental state. The state contended that the motive was the acquisition of narcotics and dangerous drugs.

On the second day of the trial, Susan Valasco testified on behalf of her husband. During the trial defense counsel told the court that he had received information from an anonymous source, following the previous day of trial, indicating that one of the jurors may have overheard a conversation between Susan Valasco and a third person which would influence the juror's decision in the case. Defense counsel stated that the informant

"* * * told me that during the selection of the jury in this case he was present in the hallway and he was sitting in the last benches; and that a state police officer, who was not in uniform at that time but was in a leather coat and black turtle-neck shirt and slacks approached Mrs. Valasco and talked to her about a warrant that is outstanding for her in Linn County. And the conversation became somewhat heated, particularly on the part of Mrs. Valasco. She raised her voice so

that he had no difficulty in overhearing that she was charged with a drug offense in Linn County. She made some reference to medication she was taking and got into a conversation with the officer.

"It is my information that the person who is now sitting on the jury, number eight, and I don't know his name right off-hand, was also present in the same vicinity as this anonymous caller and said that it was the caller's opinion that the juror would have had no trouble overhearing the matter."

Defendant then moved for a mistrial which the court denied without inquiry into the substance of the matter. Defendant assigns this denial as error contending that "the court was not in a position to exercise sound discretion without at least a limited inquiry into the possibility of a tainted juror sitting in judgment of defendant." No such request was made to the trial court.

In any event the Oregon Supreme Court has "stated many times that a motion for a mistrial is addressed to the discretion of the trial court, and that only when it can be said that the trial court has abused its discretion will this court reverse." *State v. Hoffman,* 236 Or 98, 108, 385 P2d 741 (1963); *accord, State v. Elkins,* 248 Or 322, 326, 432 P2d 794 (1967). We do not find such abuse.

*State v. Dixon,* 5 Or App 113, 481 P2d 629, Sup Ct *review denied* (1971), *cert denied* 404 US 1024 (1972), presented a situation similar to the one at hand. There defendant, a Black Panther Party member, was convicted for armed robbery. During the trial an article about the local Black Panther Party appeared in the newspaper, but it contained no reference to defendant or his trial. Defendant moved to interrogate the jurors to learn whether any of them had read the article and been influenced by it. The court denied the motion and defendant appealed. We

did not believe that the article was "* * * so highly inflammatory that the mere possibility that one or more jurors read it required the trial court to examine the jury on the matter * * *." 5 Or App at 124. During the voir dire examination, the jurors stated that defendant's Black Panther Party membership would not influence their decision in the case. Those statements were accorded considerable weight in our determination that the trial court did not abuse its discretion in denying defendant's motion.

Defendant, in this case, has specifically chosen to exclude the transcript of the voir dire examination from the record on appeal. That phase of the proceedings was considered by the court in ruling on the motion for a mistrial:

"THE COURT: Any mischief that you conjure up in your mind occurred before this juror was ever called from the back of the room and sworn to tell the truth in answer to any questions that the lawyers wanted to put to him or her about qualifications to serve as a juror."

In *State v. Grayson,* 126 Or 560, 270 P 404 (1928), the jury returned a guilty verdict. Defendant moved for a new trial and assigned as error on appeal the overruling of his motion. In affirming, the court stated:

"* * * Another ground for the motion [for a new trial] is that one Starr, a witness for the state, on the second day of the trial at the noon recess and in the hearing of the jurors made statements highly derogatory to the defendant and refused to desist when cautioned not to indulge in such comments. This affidavit is made upon information and belief and so far as its legal effect is concerned is pure hearsay. No affidavit of any person professing to have heard Starr's comments is submitted. * * *" 126 Or at 577.

Affirmed.